CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
January 29, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 7:23-cr-00042-2 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| DANIEL FRANK HEGGINS | ) | Chief United States District Judge |

**MEMORANDUM OPINION AND ORDER**

This matter is set for a trial to begin February 3, 2025. The court held a pretrial conference on January 21, 2025, and it ruled on a number of pending motions at that time. The court's rulings on those motions are set forth in the Minute Order on the docket (Dkt. No. 188), and the court's reasons for its rulings were set forth on the record.

At that time, the court took under advisement two portions of the pending motions, and it rules on those herein. First, the court took under advisement a portion of defendant's first motion in limine. (Dkt. No. 167.) In that motion (as modified orally at the pretrial conference), defendant asked that Mr. Heggins's co-defendant, Herman Estes, Jr., who has pled guilty, be required to state—on the record and before the jury—that he intends to invoke his Fifth Amendment rights not to answer certain questions or not to testify, if that is what he intends to do. The parties agreed both that Estes's Fifth Amendment right was not affected by his guilty plea and that Estes himself should be required to indicate that he is invoking his Fifth Amendment right, rather than being permitted to invoke it through standby counsel. The court took under advisement whether he must do so before the jury or instead simply before the court.

Second, the court took under advisement the portion of defendant's second motion in limine (Dkt. No. 168) requesting that the court exclude an email dated February 15, 2023, purportedly sent by Heggins to Estes on February 15, 2023. The email (Dkt. No. 168-1), as

described by Heggins, consists of "two, capitalized sentence fragments: YOU A BAD MAN! THATS NICE," in apparent response to an earlier email from Estes. The earlier email had provided sample documents Estes intended to use to try to fraudulently obtain relief from his federal gun charge. They were not related to the offenses here, except that they referenced a Federal Reserve Bank used in the offenses here, as well. The court addresses each remaining issue in turn.

I.  **Whether Mr. Estes will be required to invoke his Fifth Amendment rights, if he chooses to do so, in front of the jury?**

As to the defendant's first motion in limine, (Dkt. No. 167), the court took under advisement the issue of whether the court would require Mr. Estes, if he chooses to do so, to invoke his Fifth Amendment rights in front of the jury. The Fourth Circuit has provided specific directions to district courts faced with similar circumstances, and its guidance and recitation of the governing principles is worth repeating at length:

> A witness retains his Fifth Amendment privilege even after pleading guilty, and a sentencing court may not draw adverse inferences from his invocation of the privilege. *Mitchell v. United States*, 526 U.S. 314, 326, 328–30 (1999).
>
> When a defendant's right to compel testimony conflicts with a witness' privilege against self-incrimination, . . . a court must make a proper and particularized inquiry into the legitimacy and scope of the witness' assertion of the privilege." [*United States v. Sayles*, 296 F.3d 219, 223 (4th Cir. 2002)] (internal quotation marks omitted). In this case, we find that the district court conducted a proper voir dire hearing outside the presence of the jury to ascertain the questions defendant's counsel sought to pose and the scope of the privilege sought by the witnesses. The district court permitted the witnesses' counsel to stand nearby and to confer, allowing the witnesses to assert the privilege, and the district court to rule, on a question-by-question basis. We have reviewed the record and reject Appiah's argument that the district court did not conduct a sufficient inquiry into the witnesses' assertion of the privilege.

> A district court does not abuse its discretion when it refuses to require a witness to testify before the jury solely to invoke her Fifth Amendment privilege. *Branch*, 537 F.3d at 342. Requiring the witness to take the stand solely to invoke the privilege can lead to "unfair prejudice in the form of both unwarranted speculation by the jury and the government's inability to cross-examine" the witness. *Id.* Moreover, "any inferences that the jury might have drawn from [the witness]'s privilege assertion would have been only minimally probative—and likely improper—in any event." *Id.* We conclude that the district court did not err in refusing to permit Appiah to call S.S., a witness who would take the stand solely to invoke her Fifth Amendment privilege.
>
> "The defendant's right to present witnesses in his own defense . . . does not carry with it the right to immunize the witness from reasonable and appropriate cross-examination." *Lawson v. Murray*, 837 F.2d 653, 655 (4th Cir. 1988). We have "always considered cross-examination to be an indispensable tool in the search for truth and the Fifth Amendment cannot be used selectively to provide a witness with immunity from cross-examination." *United States v. Heater*, 63 F.3d 311, 321 (4th Cir. 1995) (internal citation and quotation marks omitted). "It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Mitchell*, 526 U.S. at 321. We conclude that the district court did not err in striking the testimony of A.B., a witness who invoked her privilege against self-incrimination on cross-examination.

*United States v. Appiah*, 690 F. App'x 807, 809–10 (4th Cir. 2017).

The court will follow this procedure and will examine Estes outside the presence of the jury initially. If there is some relevant testimony for which Estes does not intend to invoke the privilege (or for which the privilege would not apply), then the court is likely to allow him to testify before the jury. To the extent defendant's motion (Dkt. No. 167) seeks a different procedure, it is DENIED.

**II. Whether the court should exclude the February 15, 2023 email from Heggins to Estes?**

As noted above, the email Heggins seeks to exclude is one purportedly sent from him to Estes. It simply states:

> YOU A BAD MAN! THATS NICE

(Dkt. No. 168-1.) Based on the subject lines and dates, this email was apparently sent in response to an email Estes sent which attached UCC filings purporting to reflect a $4 million payment to the U.S. District Court to "discharge[] and extinguish[]" liability associated with his ongoing federal gun case. (*See generally* Dkt. No. 185-2.) One of the filings also includes a reference to the "Federal Reserve Bank of Baltimore Maryland." (*See id.*)

Heggins argues that the email should be excluded because it is not materially relevant to any issue and serves only to show "bad character." He argues that it is not admissible under Rule 404(b) and that, in any event, it should be excluded under Rule 403 as unduly prejudicial. (Def.'s 2nd Mot. in Limine 3–4, Dkt. No. 168.)

In response, the United States contends that email must be "[c]onsidered in context," including consideration of other emails the two sent each other related to the attempted use of the Federal Reserve Bank to fraudulently obtain funds, in other words, they were "swapping methods of cheating the system, including via the Federal Reserve Bank specifically." (U.S. Mem. Opp'n to 2nd Mot. in Limine 7, Dkt. No. 195.) It asserts that the email is relevant for multiple purposes, including to show a shared criminal purpose, especially as to Count 2, which charges Heggins with accomplice liability.

As the United States correctly notes, Rule 404(b) does not come into play where the evidence is intrinsic to the offense or offenses. *United States v. Chin*, 83 F.3d 83, 87 (4th Cir. 1996). "[A]cts are intrinsic when they are 'inextricably intertwined or both acts are part of a

4

single criminal episode or the other acts were necessary preliminaries to the crime charged.'" Moreover, Rule 404(b) allows admission of "all evidence or other crimes (or acts) relevant to an issue in a trial except that which tends to prove only criminal disposition." *United States v. Masters*, 622 F.2d 83, 85 (4th Cir. 1980) (citation omitted); *see also* Fed. R. Evid. 404(b) (stating that prior bad acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). Regardless of whether the challenged email is intrinsic or falls within Rule 404(b), it still must satisfy Rule 403. *See United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997) (setting forth four-factor test for evidence to be admissible under Rule 404(b), including that its probative value must not be substantially outweighed by confusion or unfair prejudice).

The court recognizes that Rule 403 is a "rule of inclusion, generally favoring admissibility." *United States v. Miller*, 61 F.4th 426, 429 (4th Cir. 2023). Nonetheless, based on the record and information currently before it, the court concludes that this email should be excluded under Rule 403 on the grounds of unfair prejudice, defined as "a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *United States v. Udeozor*, 515 F.3d 260, 264 (4th Cir. 2005) (citation omitted).

Applying that standard here, the probative value of this one email is minimal. The documents sent by Estes, to which Heggins responds, are not part of the offenses in the case or connected to them, except by mention of the Federal Reserve Bank. Moreover, although the United States argues that the email shows that Heggins agreed with Estes's methods generally, there are apparently many emails between the two, showing that they exchanged and shared strategies for obtaining benefits through fraud, or at least through the use of sovereign-citizen-

5

type documents. As a result, the probative value of one additional email is minimal. By contrast, there would be a substantial prejudicial effect on the jury if they were to see an email from Heggins calling it "nice" that Estes is a "bad man" engaged in fraudulent conduct. In short, the main effect of the email on the jury would be to show them that Heggins approved of Estes's prior bad acts knowing they were "bad." This would be highly prejudicial to Heggins, and it would invite the jury to convict him based on his views, his approval of a "bad man," and the natural implication that he, too, is a "bad man" who engaged in fraudulent conduct. The court thus finds that undue prejudice would substantially outweigh the probative value of one additional email. Accordingly, Heggins's motion in limine (Dkt. No. 168) is GRANTED as to this one email.

The clerk is DIRECTED to provide notice of this order to all counsel of record, *pro se* defendant Herman Lee Estes, Jr., and Estes's standby counsel.

Entered: January 29, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge