CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
April 29, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Action No. 7:23-cr-00042-2 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| DANIEL FRANK HEGGINS ) | Chief United States District Judge |

**MEMORANDUM OPINION AND ORDER**

This matter was tried before a jury on February 3, 2025. The jury returned a not guilty verdict on Count One, which charged Heggins with conspiracy to commit wire fraud, and a guilty verdict on Count Two, which charged Heggins with aiding and abetting his co-defendant's wire fraud on March 27, 2023, in violation of 18 U.S.C. § 1343.[1]  Prior to sending the case to the jury, defendant moved for judgment of acquittal on both counts pursuant to Federal Rule of Criminal Procedure 29. The court denied the motion as to Count One, but took it under advisement as to Count Two, deferring its ruling.

Now pending before the court is defendant's motion for acquittal (Dkt. No. 239), which is supported by a post-trial memorandum (Dkt. No. 238). The United States has responded (Dkt. No. 240), and Heggins has filed a reply (Dkt. No. 241). For the reasons set forth herein, the motion will be DENIED.

I.  BACKGROUND

The United States clarified, prior to submission of the case to the jury, that its theory of the case as to Count Two was that Heggins aided and abetted Estes's wire fraud scheme by his statements and conduct during a March 27, 2023 phone call with Estes's real estate agent, Joshua Desforges. In describing that count to the jury, the court described it as charging that Heggins

---

[1] Heggins's co-defendant, Herman Estes, pled guilty to both counts of the indictment prior to Heggins's trial.

received a telephone call in which Heggins falsely purported to be a trust manager for Estes during the purchasing process for a Roanoke County house, a house which Estes eventually purchased with a fraudulent check that Estes had created. In his motion, Heggins relies heavily on two instructions given by the court that relate to Count Two—Instructions 21 and 22.

Instruction 21, titled "Count Two – Aiding and Abetting Wire Fraud," advised:

> Count Two charges that on or about March 27, 2023, in the Western District of Virginia and elsewhere, the defendant, DANIEL FRANK HEGGINS, aided and abetted HERMAN LEE ESTES, JR. in wire fraud. This count charges that HEGGINS received a telephone call in which HEGGINS falsely purported to be a trust manager for ESTES during the purchasing process for the Roanoke County house, in violation of Title 18, United States Code, Section 1343.

(Jury Instr. No. 21, Dkt. No. 226, at 30.)

In Instruction 22, the court told the jury the three elements they had to find beyond a reasonable doubt before returning a guilty verdict on Count Two. Specifically, the court charged:

> For you to find the defendant guilty on Count Two as an aider-and-abettor, the government must prove each of the following beyond a reasonable doubt:
>
> - *First,* that the crime charged (i.e., wire fraud) was in fact committed by someone other than the defendant, in this case, Herman Lee Estes, Jr.;
>
> - *Second*, that the defendant did some affirmative act in furtherance of the wire fraud; and
>
> - *Third,* that the defendant did so with the intent of facilitating the offense's commission.

(Jury Instr. No. 22, Dkt. No. 226, at 31.)

The parties are well aware of the relevant trial evidence, so the court does not discuss it in detail here. Additional facts relevant to the motion for acquittal will be discussed in context.

2

## II.  DISCUSSION

### A.  Standard of Review

Heggins's motion for judgment of acquittal is made pursuant to Federal Rule of Criminal Procedure 29.  That rule provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  "A defendant challenging the sufficiency of the evidence faces a heavy burden . . . ."  *United States v. Young*, 609 F.3d 348, 355 (4th Cir. 2010) (internal citations and alterations omitted).  Specifically, "[t]he jury's verdict must stand unless . . . no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Royal*, 731 F.3d 333, 337 (4th Cir. 2013) (citing *Young*, 609 F.3d at 355).

Put differently, the motion should be denied if the jury's verdict on any given charge is supported by "substantial evidence."  *United States v. Alvarez*, 351 F.3d 126, 129 (4th Cir. 2003).  "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt."  *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996).  In addressing a claim of insufficient evidence, moreover, this court must "view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the [g]overnment."  *Young*, 609 F.3d at 355 (citation omitted).

In seeking relief, Heggins points out three ways in which he contends the government's proof was insufficient.  The court addresses each below.

### B.  "During the Purchasing Process"

Heggins first contends that the prosecution failed to present any evidence that Heggins

aided and abetted Estes's scheme "during the purchasing process," as referenced in Instruction 21, which was offered by the government and given by the court. He notes that the telephone conversation with Desforges occurred on March 27, and he suggests that the "purchasing process" did not begin until the purchasing agreement was signed on March 29. Because the phone call underlying the count occurred before March 29, his argument continues, there is no evidence that he committed the acts "as charged" in Instruction 21.

This argument interprets the court's instruction far too narrowly. "Purchasing process" was not a defined term in the instructions,[2] and a reasonable jury could have interpreted it as meaning the entire process involved in finding and purchasing a house, including researching and touring available properties, determining an offer price, making an offer, finalizing a contract, obtaining financing or funding, and closing. Thus, Heggins is not entitled to acquittal on this ground.

## C. Element Two—An Affirmative Act in Furtherance of the Offense[3]

Heggins's other arguments for acquittal focus on the second of the three elements of the offense in Count Two—the requirement that Heggins "did some affirmative act in furtherance of the wire fraud." (Jury Instr. No. 22.) In the first, Heggins argues, again pointing to Instruction 21, that the only statement the jury could consider as part of Heggins's "affirmative act" was his statement that he was the trust manager for Estes. In the second, he argues that even if the court considered all of the statements made by Heggins during the call, they still do not support a

---

[2] Heggins criticizes the government's citation to nerdwallet.com, which contains a broad definition of the purchasing process, including house-hunting activities preceding execution of a purchase agreement. (Reply 3 (discussing Opp'n 5).) But that is at least one reasonable meaning of "purchasing process," and the jury reasonably could have interpreted the "purchasing process" in that manner.

[3] Heggins does not contest the sufficiency of the evidence as to the other two elements of Count Two.

4

finding that Heggins's statements or actions furthered the scheme because the government's witnesses disclaimed reliance on his statements.

1. *Which Statements Can Serve As the Basis for Conviction?*

In its opposition to the motion for acquittal, the United States contends that Desforges or others could have relied on any of the statements during the course of the phone call. Other statements made during that conversation, according to Desforges, were:

- The trust had received the tax refund;
- Heggins approved of the purchase, after asking some questions about it;
- Desforges would receive a letter indicating funds were available; and
- Heggins did not want the "funds available" letter to include the entire $18 million tax refund, and it would be for a lesser amount—the amount of the sale price (at the time $1.3 million).

(Trial Tr. #1 24–26, Dkt. No. 231.)

In his reply, Heggins maintains that Instruction 21 sets forth the only statement on which aiding-and-abetting liability could be based—that Heggins was Estes's trust manager—and insists that the jury was not permitted to base his conviction on "other" statements he made during the course of that phone call. Heggins's argument misinterprets the purpose and scope of Instruction 21.

As the United States notes, Instruction 21 is a summary of the charge in Count Two and basically notes that the "affirmative act" with which Heggins was charged was the phone call. It describes that phone call by date and by a general description (the call "in which HEGGINS falsely purported to be a trust manager for ESTES"). (Jury Instr. No. 21.) Nowhere, however, does it state that the charge was limited solely to the statement that Heggins was the trust manager. Thus, this argument does not entitle Heggins to acquittal.

5

2. *"In furtherance of"*

Heggins's other argument is that the government failed to present sufficient evidence of this second element because both Desforges and the settlement agent for the purchase, Allison Robins, testified that the statements by Heggins during his phone call were not material and that they did not rely on them. Instead, they relied on the FundSmart proof-of-funds letter sent by Estes to Desforges two days later.[4] It was the FundSmart letter that was attached as the "proof of funds" for the real estate contract, and nowhere in the contract did it reference anything from the March 27 call between Desforges and Heggins. (Trial Tr. #1 47, 53–54.) Desforges also testified that he had not told anyone else involved in the transaction about the conversation with Heggins because "in the grand scheme of things" it was not "particularly material." (*Id.* at 58.)

Desforges also denied that Heggins lied to him or misrepresented anything to him:

> Q [by defense counsel]: In fact, [Heggins] never lied to you at all, correct?
>
> A. Not that I recall.

(*Id.* at 68.) On redirect, the United States attempted to impeach that testimony, but Desforges twice denied that his conversation with Mr. Heggins had misled him. (*Id.* at 68, 70.)

The United States acknowledges Desforges's testimony, although it refers to it as "baffling." (Opp'n 6.) It then argues that that the jury was not required to believe Desforges's flat denial of misleading statements and could consider whether, in light of the other evidence presented, Heggins had made statements that misled Desforges and that facilitated the scheme. (*Id.* at 6.) It notes that Heggins's statements served both to: (1) confirm Estes's earlier statements to Desforges about his forthcoming tax refund and his trust; and (2) assure Desforges

---

[4] Heggins correctly notes, and the United States does not dispute, that there is no evidence tying the proof of funds letter itself to Heggins. Instead, it appears that Desforges received it based on information Estes provided to FundSmart, which generated his requested letter.

that he would receive the proof-of-funds letter and only in a certain amount. (*Id.* at 7–9.) Then, when Desforges received that letter—which was "consistent with the impression that Daniel Heggins deliberately created"—it added to his trust of both Estes's and Heggins's representations. (*Id.* at 8.) All of these assurances were important, the United States argues. It elaborates that "[t]he deception of Josh Desforges was critical [in that] he was, unwittingly, an important part of Estes's scheme" because "the participation of a realtor," especially one from a large firm in Roanoke that handled high-dollar real estate transactions, "legitimized Estes's cash offer." (*Id.* at 7.)

The question before the court, then, is whether, in light of the testimony of Desforges and Robbins disclaiming reliance on Heggins's statements, the jury still could find that Heggins's affirmative conduct "furthered" the wire fraud committed by Estes, as the United States argues.

The Supreme Court has explained that aiding and abetting liability requires an affirmative act in furtherance of the offense but it does not require proof that a defendant participated in each and every element of the offense. *Rosemond v. United States*, 572 U.S. 65, 73 (2014) (citation omitted). Instead, aiding and abetting includes "'all assistance rendered by words, acts, encouragement, support or presence' . . . even if that aid relates to only one (or some) of a crime's phases or elements." *Id.* (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 178 (1993)).

The parties have not cited to many cases discussing the affirmative act requirement of aiding-and-abetting liability. The Second Circuit discussed the requirement at length in *United States v. Delgado*, 972 F.3d 63, 79 (2d Cir. 2020), and it also discussed other cases in which the requirement was either satisfied or not. As the *Delgado* court explained, the requirement is a "low hurdle," *id.* at 74, and "courts have never thought relevant the importance of the aid

rendered." *Rosemond*, 572 U.S. at 75. This is so because "every little bit helps—and a contribution to some part of a crime aids the whole." *Rosemond*, 572 U.S. at 73.

"At the same time, the [affirmative act requirement] is not so capacious as to encompass any act taken in relation to some identified criminal activity." *Delgado*, 972 F.3d at 75. Instead, the defendant must do something to "further[] the criminal act" or "contribute toward[] its success." *Id.* at 78 (quoting *United States v. Nusraty*, 867 F.2d 759, 766 (2d Cir. 1989) and *United States v. Medina*, 32 F.3d 40, 46 (2d Cir. 1994)). *See also id.* at 75 (explaining that the defendant's efforts must "'contribute[] towards [the] success' of the crime, even if only at the margins.") (citations omitted). Put differently, "while the quantum of assistance provided by an accomplice may be trifling, it cannot be zero. Rather, to impose criminal liability under the federal aiding-and-abetting statute requires proof that a defendant performed *some* act that 'directly facilitated or encouraged' the commission of a substantive crime." *Id.* (citing *Medina*, 32 F.3d at 45).

In applying those general principles, cases have held that the federal aiding-and-abetting standard can be satisfied by the defendant's presence alone, if that presence "positively encouraged the perpetrator." *Id.* at 78 (citing *United States v. Garguilo*, 310 F.2d 249, 253 (2d Cir. 1962)). On the other hand, where a defendant provides a gun that is not used in the specific firearms offense charged, or where he intends and attempts to procure cocaine, but different cocaine is procured and actually sold in the offense charged, the defendant has not aided and abetted, because he did not contribute to the crime as charged. *Id.* at 76–77 (discussing *Medina* and *United Stats v. Labat*, 905 F.2d 18 (2d Cir. 1990), respectively).[5]

---

[5] These two cases illustrated the requirement that the defendant's act must aid and abet the *specific* underlying crime charged and not just a related one. *Delgado*, 972 F.3d at 75.

8

Heggins relies heavily on the testimony of Desforges that he was not misled and that it was the FundSmart proof-of-funds letter, and not any statements by Heggins, that constituted the fraud. But as the United States notes, this ignores the other evidence in the record, which the jury was entitled to consider to reach a contrary conclusion. Viewed in the light most favorable to the government, the court agrees with the government's explanation as to how a reasonable jury could find that Heggins's statements in fact played some role in facilitating or furthering Estes's scheme to defraud.

The evidence before the jury showed that Heggins lied about Estes having a trust with $18 million, and mispresented that Heggins was the manager of that trust, with authority to approve a million-dollar-plus real estate transaction. Heggins also told Desforges that he would receive the proof-of-funds letter and that the amount would not be for the full amount of the tax refund, but only for the amount needed at closing. Consistent with Heggins's statements, Desforges received the document two days later, which continued the illusion that Estes had millions of dollars at his disposal in his trust.

Ensuring that a licensed realtor experienced in the sale and purchase of high-dollar homes was the person to present Estes's offer was key to the scheme, and the jury could have concluded—despite his testimony to the contrary—that Desforges was misled. The jury also could have concluded that Desforges's belief that Estes in fact had a trust with $18 million in it and that the trust manager was approving the purchase, which was followed by written proof of funds, as promised, helped grease the wheels of the deal, or at least kept Desforges from getting suspicious.

Indeed, in the context of considering whether an act was "in furtherance of" a wire or fraud scheme, courts have found that similar lulling-type comments satisfied the "in furtherance

9

of" requirement. *E.g.*, *United States v. Pierce*, 400 F.3d 176, 180 (4th Cir.), *on reh'g,* 409 F.3d 228 (4th Cir. 2005) (explaining that acts still can be "in furtherance" of mail or wire fraud if they "were 'designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely . . . .'") (quoting *United States v. Lane,* 474 U.S. 438, 451–52 (1986)). *See also United States v. Blecker*, 657 F.2d 629, 536 (4th Cir. 1981) (the relation between the act and the scheme to defraud requires that the completion of the scheme or preventing its detection be "dependen[t] in some way" on the act) (quoting *United States v. LaFerriere*, 546 F.2d 182, 187 (5th Cir. 1977)).

For the foregoing reasons, the court concludes that a reasonable jury could have found that Heggins's statements assisted (even if that assistance was "trifling," *Delgado*, 972 F.3d at 75), facilitated, or encouraged Estes in committing wire fraud.

### III. CONCLUSION AND ORDER

For the foregoing reasons, Heggins's motion for acquittal (Dkt. No. 239) is DENIED. The clerk is DIRECTED to provide notice of this order to all counsel of record, *pro se* defendant Herman Lee Estes, Jr., and Estes's standby counsel.

Entered: April 29, 2025.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge